GEORGE W. HOPKINS, administrator, *vs.* GERTRUDE L.
HOPKINS & others.

GERTRUDE L. HOPKINS & another *vs.* GEORGE W. HOPKINS,
administrator.

Bristol.   January 5, 1934. — September 12, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & FIELD, JJ.

*Probate Court*, Agreed statement of facts, Appeal.   *Marriage and Divorce.*
*Legitimacy.   Statute*, Construction, Revision.

Upon appeal from a decree of a probate court entered after the hearing
of a petition upon an agreed statement of facts, this court may draw
appropriate inferences from such facts.

It is the general rule of statutory as well as of grammatical construction
that a modifying clause is confined to the last antecedent unless
there is something in the subject matter or dominant purpose which
requires a different interpretation.

Although, in the construction of a statute, punctuation may be disre-
garded, resort may be had to it to remove an obscurity.

The phrase in G. L. (Ter. Ed.) c. 207, § 6, "if they continue to live to-
gether as husband and wife in good faith on the part of one of them,"
applies only to the period described by the next preceding words,
"after the impediment to their marriage has been removed by the
death or divorce of the other party to the former marriage," and
not to the entire period from the time of the "marriage contract with
due legal ceremony."

The verbal changes made in St. 1895, c. 427, after its original enact-
ment, and its final embodiment in R. L. c. 151, § 6 (now G. L. [Ter.
Ed.] c. 207, § 6), did not alter its meaning and should be construed
as a continuation of it.

Without being divorced, a married man left his wife in 1888 and there-
after lived with another woman in this Commonwealth until his death
in 1931.   Children were born to him and the woman previous to 1905,
each of whom he recognized and acknowledged as his.   In 1905 he
and the woman entered into a marriage contract with due legal cere-
mony in this Commonwealth, she having no knowledge that he had
a wife and fully believing that she had a right to marry him.   In 1907
the woman learned of the living wife.   Thereafter and until the
wife's death in 1930, the woman continued to live with the man but
without sexual intercourse.   Both he and the woman learned of the
wife's death at that time.   After that time and until his death, but
without further marriage ceremony, they lived together as man
and wife in the full belief that they were married from the time of
the death of the wife.   *Held*, that

(1) The circumstance, that the relations of the man and the woman previous to their marriage ceremony of 1905 were illegal and immoral apart from the fact that the man had a wife, did not prevent the application of R. L. c. 151, § 6 (later G. L. c. 207, § 6), to that marriage ceremony; and said § 6 was applicable thereto;

(2) The proper inference from the facts was that, after the death of the man's wife in 1930, he and the woman lived together in good faith on her part, notwithstanding her knowledge since 1907 that he was married to another;

(3) By reason of said § 6, the man and the woman were legally married from the time of the wife's death;

(4) Although the children born to the man and the woman previous to 1905 were not "issue of such subsequent marriage" of 1905 within the meaning of said § 6 and consequently were not made thereby the legitimate children of the man, and although they were not made legitimate under R. L. c. 133, § 5 (later G. L. c. 190, § 7), by the marriage ceremony of 1905, because that ceremony was invalid, nevertheless, inasmuch as the man and the woman, by reason of said § 6, were legally married from the time of the wife's death in 1930, they then "intermarried" within the meaning of said § 7, as amended by St. 1925, c. 281, § 3, and the children therefore were legitimate children of the man at the time of his death in 1931.

PETITION for partial distribution, filed in the Probate Court for the county of Bristol on March 13, 1933, by the administrator of the estate of George L. Hopkins, late of Somerset.  Also a

PETITION for revocation of the appointment of said administrator, filed in the same court on May 12, 1933, by the two eldest children of the decedent.

The petitions were heard by *Hitch,* J., upon an agreed statement of facts.  Material facts and rulings by the judge are stated in the opinion.  By his order, there were entered a decree on the first petition ordering partial distribution among the widow and six children of the decedent, and a decree dismissing the second petition.  The two eldest children of the decedent, as respondents in the first petition and petitioners in the second, appealed from the decrees.

*F. J. Carney,* (*W. J. Killion* with him,) for Gertrude L. Hopkins and another.

*H. W. Radovsky,* (*A. Swindells* with him,) for the administrator.

RUGG, C.J.  The questions at issue relate to the administration and distribution of the estate of George L. Hop-

kins, deceased intestate, late of Somerset. The facts are agreed. So far as material they are these: The intestate was married in New York in 1873. Two children, the issue of that marriage, were born in that State, at present reside there and are respondents in the first petition and the petitioners in the second. Without being divorced, the intestate in 1888 left his wife and children, came to this Commonwealth where shortly afterwards he began living with Mary F. Sullivan and continued to live with her here until his death in 1931. Four children now surviving were born of this cohabitation, all before 1901. From the times of their respective births he recognized and acknowledged these as his children. In 1905, he and Mary F. Sullivan entered into a marriage contract with due legal ceremony in this Commonwealth. At that time she had no knowledge of his former marriage or that he had a wife and fully believed that she had a right to marry him. They lived together as husband and wife until in 1907 she learned for the first time of his wife and two children living in New York. She continued to live with him but without sexual intercourse until July 30, 1930, when his wife died. Both were informed of her death on that date. Thereafter they continued to live together as husband and wife in the full belief that they were married from the time of the death of the wife on July 30, 1930. No ceremony of marriage was entered into between them other than the one in 1905.

The trial judge rightly ruled that the burden rested upon those asserting that they were entitled to share in the estate of the intestate to prove their contention.

Several requests for rulings were filed, all of which were denied except the one as to the burden of proof. In disposing of those requests the trial judge said with respect to the intestate and Mary F. Sullivan, "It being agreed and I find that they thereafter [that is after July 30, 1930, when the first wife died] lived together in good faith" and found and ruled that the four children born in Massachusetts are legitimate and entitled to share in the estate of the intestate. In response to a request for report of material facts under G. L. (Ter. Ed.) c. 215, § 11, the trial judge

reported that no evidence was introduced but the petitions were heard upon an agreed statement of facts which he found to be true. He found also that Mary F. Hopkins, formerly Sullivan, was legally the widow of the intestate. Appeals by the two children born and resident in New York bring the cases here.

Practice upon probate appeals is the same as that upon appeals in equity so far as practicable and applicable. *Tuells* v. *Flint*, 283 Mass. 106, 108. It is the duty of this court to draw appropriate inferences from the agreed facts. They stand upon the same footing in this respect as a master's report or other documentary evidence. *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138, 143. *Forman* v. *Gadouas*, 247 Mass. 207, 210, 211. See G. L. (Ter. Ed.) c. 231, §§ 126, 144.

The underlying question to be decided relates to the matrimonial status of the intestate and Mary F. Sullivan. The determination of that question depends upon the interpretation of G. L. (Ter. Ed.) c. 207, § 6 (identical with R. L. c. 151, § 6, in force in 1905). It is in these words: "If a person, during the lifetime of a husband or wife with whom the marriage is in force, enters into a subsequent marriage contract with due legal ceremony and the parties thereto live together thereafter as husband and wife, and such subsequent marriage contract was entered into by one of the parties in good faith, in the full belief that the former husband or wife was dead, that the former marriage had been annulled by a divorce, or without knowledge of such former marriage, they shall, after the impediment to their marriage has been removed by the death or divorce of the other party to the former marriage, if they continue to live together as husband and wife in good faith on the part of one of them, be held to have been legally married from and after the removal of such impediment, and the issue of such subsequent marriage shall be considered as the legitimate issue of both parents."

It is plain that at their inception the relations of the intestate and Mary F. Sullivan were illegal. They began living together without any form of marriage and not on

the faith of any ceremony, or in the belief that they were husband and wife. Their conduct was in utter disregard of the laws of the Commonwealth. Illegality tainted these relations quite apart from the fact that the intestate, unknown to Mary F. Sullivan, had a wife and children living in New York, although that fact would accentuate the illegality in some aspects. This cohabitation was without sanction in law or morals. After cohabitation of this character had continued about seventeen years, and after the birth of all their children, they entered into a marriage contract with due legal ceremony in the full belief on the part of Mary F. Sullivan that a legal marriage was thereby established. These circumstances do not prevent the application of § 6 to the marriage ceremony of 1905. That section contains no conditions concerning the previous habits, conduct, virtue or vice of the person who enters into such marriage contract. The only prerequisite is that it must be entered into in good faith. The terms of that section are broad enough to include a person situated as was this woman and to recognize that such as she may repent of past shortcomings and desire thereafter to lead a meritorious life in conformity to law and thereby come under its shelter. She was the mother of four children born out of wedlock. A lawful marriage would render those children the legitimate issue of both parents. She was ignorant of the previous marriage of the intestate. So far as concerns the ceremony of 1905 it falls within the terms of § 6.

Two years after that ceremony Mary F. Sullivan was informed of the earlier marriage of the intestate. She was then in a difficult position. She was the mother of four boys born out of wedlock, ranging in age from fifteen to eight years, of whom the intestate was the father. In some circumstances it would have been her duty to leave him. *White* v. *White*, 105 Mass. 325, 327. What she did was to continue to do her part in maintaining the family, living under the same roof, but without coition with the intestate. After the death of the first wife in 1930 until the death of the intestate in 1931, the two lived together

as man and wife in the full belief that they were legally married. Whatever may be thought about the legality, the wisdom or the ethics of this conduct, the statute must be interpreted as framed. A closer analysis is necessary to determine its scope with reference to these particular facts. Specifically it is important to determine whether the part of the concluding clause of § 6, "if they continue to live together as husband and wife in good faith on the part of one of them," applies only to the period subsequent to the removal of the impediment to their marriage or whether it applies to the entire period from the time of the "marriage contract with due legal ceremony." It is the general rule of statutory as well as grammatical construction that a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation. *Cushing* v. *Worrick,* 9 Gray, 382, 385. *Clarke* v. *Treasurer & Receiver General,* 226 Mass. 301, 303. *Opinion of the Justices,* 286 Mass. 611, 620. We think that this general rule governs the interpretation of this clause of § 6. This construction is confirmed by examination of § 6 as originally enacted in St. 1895, c. 427. In that form the several significant parts of the section are prefaced by the word "where" and are set off from each other by semicolons. The modifying clause now in question there clearly was limited to the period subsequent to the removal of the impediment. Although punctuation may be disregarded, resort may be had to it to remove an obscurity. *Dowling* v. *Board of Assessors of Boston,* 268 Mass. 480, 488. *Opinion of the Justices,* 286 Mass. 611, 620. The verbal changes made in the subsequent revision of St. 1895, c. 427, and its final embodiment in § 6 have not altered the meaning and are to be construed as a continuation of the previous law. *Main* v. *County of Plymouth,* 223 Mass. 66, 69. *Ollila* v. *Huikari,* 237 Mass. 54, 56. *Commonwealth* v. *Welosky,* 276 Mass. 398, 409.

The crucial point then is whether the intestate and Mary F. Sullivan continued to live together in good faith on her part after the removal in 1930 of the impediment to the

legality of their marriage in 1905. The fact that in 1930 and for some years prior thereto she had known of the existence of the prior marriage does not in our opinion prevent living with him thereafter in good faith. This view is confirmed by resort to decisions respecting the meaning and objects of § 6. A somewhat full statement is found in *Turner* v. *Turner*, 189 Mass. 373, at pages 375, 376: "While one of the objects of the statute is to protect persons who enter into the marriage relation in good faith, the broad general purpose of the statute is to provide against illegitimacy of children and to protect the public interests. Its purpose is to provide that the marriage ceremony, illegal at first by reason of the existence of an impediment, shall be regarded as taking place at the time the impediment is removed and as covering all marital relations thereafter assumed in good faith. It is immaterial whether the removal of the impediment is known or unknown. Whether known or not, the marriage ceremony becomes operative upon the removal, if the parties continue to live together as husband and wife in good faith on the part of one of them. Such a construction of the statute is not only in accordance with its plain reading, but it carries out the real *bona fide* intention of the innocent party to contract a valid marriage. Upon the removal of the impediment and the subsequent cohabitation in good faith, the relation becomes such as the innocent party supposed it to be. And such a relation, thus once sanctioned in the law, legitimatizes the children and leads to the protection of the moral welfare of the community." This statement is supported in general by other decisions dealing more briefly with the subject. *Lufkin* v. *Lufkin*, 182 Mass. 476. *Commonwealth* v. *Josselyn*, 186 Mass. 186. *Turner* v. *Williams*, 202 Mass. 500, 506. *Gardner* v. *Gardner*, 232 Mass. 253. There is nothing inconsistent with this statement in other cases where § 6 has been considered and held not to be applicable to facts disclosed. *Tyler* v. *Tyler*, 170 Mass. 150. *Tozier* v. *Haverhill & Amesbury Street Railway*, 187 Mass. 179. *Commonwealth* v. *Stevens*, 196 Mass. 280. *Commonwealth* v. *Ross*, 248 Mass. 15. *Wright* v. *Wright*, 264 Mass. 453.

The facts in our opinion bring the case at bar within the protection of § 6 and the sweep of the principle of *Turner* v. *Turner*, 189 Mass. 373. There was the form of a legal marriage entered into in an honest belief in its binding force followed by cohabitation in like good faith, by one of the parties, and there was a continuation of the cohabitation on the faith of that form of legal marriage after the removal of the impediment. The good faith required by the statute existing at those decisive occasions and periods is not effaced or nullified or adversely affected by the knowledge during an intervening period of the existence of the impediment to the marriage. We are of opinion that in all the circumstances the form of marriage of 1905 was validated after the death of the first wife in 1930.

A further question arises as to the legitimacy of the children of the intestate born of his relations with Mary F. Sullivan. Those children were all born prior to the form of marriage in 1905. They are not the issue of "such subsequent marriage" as those words are used in § 6. By every test they were the issue of an illegal cohabitation. That relation was without a shadow of support in law. It was not founded on any ceremony. There was no good faith about it. It was obnoxious both to the law and to morality. It is provided, however, by G. L. (Ter. Ed.) c. 190, § 7, that an "illegitimate child whose parents have intermarried and whose father has acknowledged him as his child shall be deemed legitimate." The father acknowledged these children as his. Their parents intermarried after their birth by force of G. L. (Ter. Ed.) c. 207, § 6, as has already been decided by the early part of this opinion. The form of ceremony in 1905 was invalid and gave no color of legitimacy to the children born prior thereto. But by force of § 6 it is mandatory that the parents "be held to have been legally married from and after the removal of such impediment" as had existed. There is no description or limitation in G. L. (Ter. Ed.) c. 190, § 7, as to the particular form of intermarriage by parents which shall have the effect of making a child legitimate who was born out of wedlock. Any intermarriage, which either immediately is,

or remotely becomes, sanctioned by the law as valid, renders the child legitimate, if acknowledged by the father, from and after the time when the intermarriage becomes valid under the law. These children therefore are the legitimate children of the intestate and as such are entitled to share in his estate. *Loring* v. *Thorndike*, 5 Allen, 257. *Houghton* v. *Dickinson*, 196 Mass. 389, 391. There is nothing inconsistent with this conclusion in the decision in *Adams* v. *Adams*, 154 Mass. 290.

It is not necessary to examine the requests for rulings one by one. So far as denied, the substantial rights of the appellants were not adversely affected. All the arguments urged in behalf of the appellants have been considered but do not require further discussion.

*Decrees affirmed.*