(84 P.3d 608)
No. 87,94█

BERKSHIRE AIRCRAFT, INC., *Appellant*, v. AEC LEASING COMPANY, *Appellee*.

Opinion filed September 6, 2002.

*David A. Rameden* and *Matthew C. Miller*, of Shook, Hardy & Bacon, L.L.P., of Overland Park, for the appellant.

*Robert A. Bye*, of Overland Park, for the appellee.

Before KNUDSON, P.J., BRAZIL, S.J., and ROBERT J. FLEMING, District Judge, assigned.

FLEMING, J.: Berkshire Aircraft, Inc., (Berkshire) appeals from the bench trial judgment of the trial court denying Berkshire's contract claim against AEC Leasing Company (AEC).

In February 2000, Berkshire, an aircraft brokerage company, and AEC, the owner of a Beechcraft B58 Baron aircraft, entered

into an aircraft sales management agreement. Under the terms of the agreement, Berkshire had the right to manage the sale of and solicit offers for the purchase of the aircraft. AEC could terminate the agreement at any time by notifying Berkshire of the termination in writing. If the aircraft was sold by Berkshire prior to termination, AEC agreed to pay a 3% commission. The agreement also provided:

"If Client [AEC] directly [or] indirectly sells or leases or contracts to sell or lease the Aircraft within ninety 90 days after the termination of this Agreement to any person or entity identified, introduced, procured or contracted by BAI [Berkshire], according to a list provided to the client, during the term of this Agreement; then Client agrees immediately to pay BAI a commission of $10,000 USD (Ten Thousand Dollars)."

The parties also agreed that interpretation of the agreement was to be governed by the substantive law of Massachusetts.

On November 21, 2000, AEC sold the aircraft to Kansas City Aviation Center, Inc., (KCAC) which sold the aircraft to Darrell Chaney on the same day. A few days later, Albert Cinelli, president of AEC, spoke with Marion Lipinski, owner of Berkshire, and mentioned that the aircraft had been sold to Chaney. Lipinski told Cinelli that Chaney was one of the prior contacts and requested that AEC pay Berkshire its flat commission of $10,000. AEC refused to pay the commission.

Berkshire brought a limited action suit against AEC under K.S.A. Chapter 61 to recover the commission due under the contract. AEC appeared in court and entered a general denial. Thereafter, Berkshire served AEC with requests for admissions. Pursuant to K.S.A. 2001 Supp. 61-3101, AEC's responses were due 15 days later, on March 5, 2001. AEC did not, however, serve its responses within the time required by that statute.

On March 21, 2001, 16 days after the responses were due, AEC faxed to Berkshire's counsel its response to Berkshire's request for admissions and an untimely answer to the petition. On that same date, the case was transferred to K.S.A. Chapter 60, pursuant to a motion filed by AEC. See K.S.A. 2001 Supp. 61-2910.

AEC did not move to serve its responses to Berkshire's request for admissions out of time, although it did move for leave to file

its answer out of time and pleaded that it mistakenly miscalendared the answer date. Berkshire opposed AEC's motion to file an untimely answer and also moved to strike the belated responses to the request for admissions. The trial court denied Berkshire's motion to strike and refused to deem the request as admitted.

During the bench trial, Berkshire introduced its telephone records indicating several calls made to Darrell Chaney. Chaney had made offers, through Berkshire, to purchase the aircraft from AEC, including an offer of November 7, 2000. Nevertheless, the trial court interpreted the contract as requiring Berkshire to provide AEC, during the term of the agreement, with its list of prior contacts to protect its right to a flat commission if AEC sold the aircraft to one of the listed potential buyers within 90 days of termination. The trial court ruled that because Berkshire did not provide documentation of prior contacts until after Berkshire learned of the sale to Chaney, which effectively terminated the contract, it was not entitled to the flat commission.

Berkshire raises numerous issues on appeal, but we have determined the controlling issues to be: (1) Did the trial court err by permitting AEC to answer Berkshire's request for admissions out of time; (2) did the trial court err in construing the brokerage agreement to require Berkshire to provide AEC, during the term of the agreement, with a list of those persons or entities identified, introduced, procured, or contacted by Berkshire, in order to be entitled to a commission?

Interpretation of a statute is a question of law, and this court's review is unlimited. An appellate court is not bound by the trial court's interpretation of the statute. *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000). As stated in *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998):

"It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. [Citation omitted.] The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. [Citation omitted.] Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not

read such a statute so as to add something not readily found in the statute. [Citation omitted.]"

K.S.A. 2001 Supp. 61-3101(b), the limited action provision relating to request for admissions, provides:

"(b) Each of the matters requested shall be deemed to be admitted for purposes of the pending lawsuit, unless within 15 days after the request is served, the party to whom the request is directed submits to the party propounding the request either:
(1) A sworn statement denying specifically the matters requested; or
(2) written objections on the ground that some or all of the requested admissions are privileged or irrelevant or that the request is otherwise improper in whole or in part."

The Chapter 60 counterpart, K.S.A. 2001 Supp. 60-236(a), provides for judicial discretion not found in Chapter 61. It states:

"A matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter."

K.S.A. 2001 Supp. 60-236(b) provides:

"Any matter admitted under this rule is conclusively established unless the judge on motion permits withdrawal or amendment of the admission. Subject to the provisions of K.S.A. 60-216, and amendments thereto, governing amendment of a pretrial order, the judge may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the judge that withdrawal or amendment will prejudice such party in maintaining such party's action or defense on the merits."

AEC argues that the trial court had discretion in pretrial discovery matters and cites in support of that proposition *Hill v. Farm Bur. Mut. Ins. Co.*, 263 Kan. 703, 704, 952 P.2d 1286 (1998). AEC also cites *Sullwold v. Barcus*, 17 Kan. App. 2d 410, 416, 838 P.2d 908, *rev. denied* 251 Kan. 942 (1992) (the trial court has the discretion to allow amendment of pleadings), and *McKissick v. Jackson*, 15 Kan. App. 2d 508, 509, 809 P.2d 1249, *rev. denied* 249 Kan. 776 (1991) (the trial court has discretion in granting requests for continuances).

AEC's reliance on these cases is misplaced because a trial court's discretion to control discovery, to allow amendment of pleadings, and to grant continuances is based on statutory authority. See K.S.A. 2001 Supp. 60-226 (discovery); K.S.A. 2001 Supp. 60-215 (amendment of pleadings); K.S.A. 60-240 (continuances). Conversely, no statutory authority authorizes a trial court to allow a party to withdraw or amend admissions in limited action cases. Notably absent from Chapter 61 is a provision similar to that found in Chapter 60 allowing for withdrawal or amendment of admissions. If the legislature had wished to confer such authority in limited actions, it would have specifically done so as it did in actions under Chapter 60.

AEC also argues that removal of the case from Chapter 61 to Chapter 60 justifies a trial court granting leave to answer out of time. When AEC transferred the case from Chapter 61 to Chapter 60, its 15 days for responding to the Chapter 61 request for admissions had already expired. As such, when AEC failed to respond within 15 days to Berkshire's request for admissions, each request was deemed admitted under K.S.A. 2001 Supp. 61-3101(b). Because no provision in Chapter 61 allows for amendment or withdrawal of admissions, the trial court was without statutory authority to allow AEC to withdraw its admissions. The subsequent transfer to a Chapter 60 proceeding did not negate the prior application and effect of K.S.A. 2001 Supp. 61-3101(b).

Berkshire also contends that the trial court erred in determining that the parties' brokerage contract did not require AEC to pay Berkshire a brokerage commission. The interpretation and legal effect of written documents are matters of law upon which our standard of review is unlimited. *City of Topeka v. Watertower Place Dev. Group*, 265 Kan. 148, 153, 959 P.2d 894 (1998).

The trial court determined that for Berkshire to recover the $10,000 flat commission under the parties' brokerage agreement, Berkshire was required to provide AEC, during the term of the contract, with a list of potential buyers who Berkshire identified, introduced, procured, or contacted. The trial court further found that because no such list had been provided to AEC prior to the

sale of the aircraft, AEC was not required to pay Berkshire the flat commission.

Berkshire argues that the trial court did not properly construe the brokerage agreement in accordance with basic rules of grammatical construction. Berkshire argues that the trial court's interpretation of the contract ignores the commas before and after the phrase "according to a list provided to the client." Berkshire insists that the commas are critical to a basic grammatical understanding of the paragraph in question because they delineate the beginning and end of the modifying clause. Berkshire claims that the commas separate the modifying clause "according to a list provided by the client," which permits the paragraph to be read without the clause. Without the clause, the paragraph in question reads, in pertinent part, as follows: "to any person or entity identified, introduced, · procured or contacted by [Berkshire] . . . during the term of this Agreement."

Massachusetts law follows the general rule of grammatical construction that a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation. See *Deerskin Trading Post, Inc. v. Spencer Press, Inc.*, 398 Mass. 118, 123, 495 N.E.2d 303 (1986); *Hopkins v. Hopkins*, 287 Mass. 542, 547, 192 N.E. 145 (1934); *Glass v. City of Lynn*, 49 Mass. App. 352, 354, 729 N.E.2d 1136 (2000).

Massachusetts law on contract interpretation requires that "the court must give effect to the parties' intentions and construe the language to give it reasonable meaning wherever possible." *Baybank Middlesex v. 1200 Beacon Properties, Inc.*, 760 F. Supp. 957, 963 (D. Mass. 1991). "The construction of a written instrument to be adopted is the one which appears to be in accord with justice and common sense and the probable intention of the parties." *Clark v. State Street Trust Co.*, 270 Mass. 140, 153, 169 N.E. 897 (1930).

We disagree with the trial court's interpretation of the contract. The trial court's interpretation allows for the possibility of an unfair and unreasonable result. The contract was nonexclusive, meaning that AEC was not prohibited from directly selling the aircraft itself.

The contract required AEC to make the aircraft available at the Johnson County Airport, upon reasonable notice, and to provide all mechanical information regarding the aircraft for review by potential buyers.

Thus, under the trial court's interpretation of the contract, if AEC learned of the identity of a potential buyer and directly sold the aircraft to such buyer before being notified of the buyer's identity by Berkshire, AEC could defeat Berkshire's commission. Such a result was clearly not contemplated by the parties.

Rather, the parties' intention is derived from a plain reading and a reasonable interpretation of the agreement. AEC could terminate the agreement at any time by providing Berkshire with a written notice of termination. Such termination would trigger Berkshire's obligation to notify AEC of a list of its contacts. If the aircraft were sold within 90 days of termination to someone on Berkshire's list, Berkshire would be paid a flat commission. If the aircraft were sold to someone not on Berkshire's list, no commission would be due. If the aircraft were sold more than 90 days after termination, regardless of whether the buyer was on Berkshire's list, no commission would be due.

We conclude that the trial court failed to construe the contract in accordance with basic rules of grammatical construction and in accordance with Massachusetts law.

The trial court also ruled as a matter of fact that the airplane in question was traded to KCAC. AEC argues that since KCAC is not a "person or entity identified, introduced, procured or contacted by [Berkshire]," Berkshire is not entitled to a commission on the sale. Berkshire argues that since AEC traded the plane to KCAC and KCAC transferred the aircraft to Chaney on the same date, it was a pass-through sale.

One of the requests for admission served upon AEC by Berkshire requests AEC to admit "that AEC sold the Aircraft to Mr. Chaney sometime after October 2, 2000." By failing to timely respond to Berkshire's request for admissions, AEC admitted that it sold the aircraft to Chaney. AEC is bound by that admission. See *McVey v. Pfingston*, 3 Kan. App. 2d 276, 281, 593 P.2d 1014, *rev. denied* 226 Kan. 792 (1979).

We reverse and remand to the trial court with instructions to enter judgment in favor of Berkshire for the sum of $10,000.