JOAN B. LARKIN *vs.* CHARLESTOWN SAVINGS BANK.

Suffolk.    January 12, 1979. — March 13, 1979.

Present: KEVILLE, BROWN, & GREANEY, JJ.

*Mortgage*, Real estate, Interest on tax payments. *Interest. Statute*,
    Construction.

General Laws c. 183, § 61, which provides that mortgagees who re-
    quire advance payments on account of real estate taxes on mort-
    gaged property shall pay interest "at least once a year at a rate and
    in a manner to be determined by the mortgagee," and provides for
    a reporting system to the Commissioner of Banks with reference to
    the amount of net profit or loss from the investment of the escrow
    deposits, is clear, specific, unambiguous, and not in need of judicial
    construction as to how the interest rate is to be set. [182-186]

CIVIL ACTION commenced in the Superior Court on
December 6, 1976.

A motion to dismiss was heard by *Lynch*, J.

*Joseph M. Cohen* for the plaintiff.

*James E. McGuire* (*John J. McCarthy & Stanley V.
Ragalevsky* with him) for the defendant.

GREANEY, J. The plaintiff appeals from the allowance
of the defendant's motion to dismiss, based on the ground
that the complaint seeking to test the meaning and valid-
ity of G. L. c. 183, § 61, does not set out a matter appropri-
ate for declaratory relief under G. L. c. 231A.[1] We find the

----

[1] This case is styled as a "pilot" case. It is one of a group of cases
brought by different mortgagors against savings and cooperative
banks to test the validity and meaning of G. L. c. 183, § 61. The other
cases are John H. Small *vs.* Charlestown Savings Bank, (No. 77-575),
Vernice W. McEacherin *vs.* North Cambridge Co-operative Bank (No.
77-576), Stephen B. Hunt *vs.* Home Savings Bank, (No. 77-578); and
Nathan Gold *vs.* Merchants Cooperative Bank (No. 77-579). In a stipu-
lation approved by a single justice on July 14, 1977, it was agreed by
the parties to all the cases that the cases are similar in their facts and

statute to be unambiguous and order the entry of a decla-
ration as to its effect.

The case purports to be brought as a class action[2] and
is part of the continuing dispute between mortgagors and
residential mortgage lenders concerning payment of in-
terest by the lenders on tax escrow mortgage accounts.
The assertions made by the complaint, and the pertinent
procedural history, are these. The plaintiff is the co-own-
er of a one-family house in Randolph which she occupies
as her home. The defendant bank holds a mortgage on the
house, and since July 1, 1975, the plaintiff has paid the
bank advance monthly payments for the discharge of real
estate taxes on the property in keeping with the terms of
the tax escrow clause in her mortgage. It is alleged that
the bank has mingled these advance payments with its
own funds, has invested them, has realized profits, and
has failed to account for the profits. In 1973 the Legisla-
ture enacted G. L. c. 183, § 61, to take effect on July 1,
1975. This statute, set out fully in the margin,[3] requires

procedural history and that the decision in this case would be decisive
of the appeal in each of the other cases.

[2] While the complaint has been styled as "on behalf of a class of
mortgage obligors" no class has been certified or established under
Mass.R.Civ.P. 23, 365 Mass. 767 (1974).

[3] General Laws c. 183, § 61 (inserted by St. 1973, c. 299, § 1), provides
that: "A mortgagee doing business in the commonwealth and holding
a first mortgage or lien on a dwelling house of four or fewer separate
households occupied or to be occupied in whole or in part by the
mortgagor who requires advance payments, deposits or other security
by said mortgagor for the payment of real estate taxes on mortgaged
property, shall pay interest to said mortgagor on any amounts so paid
or deposited in advance. Interest shall be paid at least once a year at
a rate and a manner to be determined by the mortgagee."

"Mortgagees required to pay such interest shall file annually with
the commissioner of banks a statement showing the amount of net
profit or loss from the investment of said deposits. Mortgagees show-
ing a net loss from these investments may file with said commissioner
a request for an exemption from the requirement that interest be paid
to mortgagors. The commissioner shall maintain as a public record an
annual report of interest rates paid to mortgagors as required by this
section during the preceding annual period. The report shall list the

mortgagee banks, including the defendant, to pay inter-
est at least once a year at "a rate and in a manner to be
determined by the mortgagee," and to file annually with
the Commissioner of Banks a statement showing the
amount of net profit or loss from the investment of tax
deposits. Mortgagees showing a net loss from the invest-
ments may seek from the Commissioner an exemption
from the requirement of paying interest. The annual re-
ports of interest rates paid under the statute are main-
tained by the Commissioner as public records. The com-
plaint further alleges that the first set of reports filed
under the statute by seventy-seven savings banks in the
geographical area of Boston reveals interest payments
within a range of 0% to 5%, with the defendant Charles-
town Savings Bank paying 2%.[4]

The complaint seeks a declaratory judgment constru-
ing the statute to require the bank to pay a "fair and
reasonable return" in relation to the return "on other
funds received and invested by [the bank]." In the ab-
sence of such a construction, the plaintiff asserts that
there is doubt that the statute is sufficiently specific to be
enforceable, and that if it should be found to be void or
unenforceable because of vagueness, then the bank has
been unjustly enriched by the investment of the advance
tax payments.[5]

---

mortgagees granted exemptions under this section during the preced-
ing annual period."

[4] The breakdown is this: two banks are reported at 0%, thirty-two
banks at 1%, one bank at 1¼%, two banks at 1½%, twenty banks at
2%, one bank at 2.1%, one bank at 2¼%, two banks at 2½%, eleven
banks at 3%, one bank at 3.058%, three banks at 4%, and one bank
at 5%. Presumably the banks paying 0% have incurred losses on their
accounts and have been exempted from the requirement to pay inter-
est by the commissioner.

[5] We do not read the complaint as making a claim that the bank has
acted arbitrarily in establishing its rate at 2%, and do not express any
opinion as to the sufficiency of such a claim if later made. Paragraph
18 of the complaint, read in context, does not make such a claim but
relates to the first contention that the statute must be construed to

The bank filed a motion to dismiss the complaint under Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974). After hearing, a Superior Court judge ruled that the complaint did not allege a justiciable controversy appropriate for c. 231A relief since, in substance, the complaint requested the court to rewrite rather than interpret the statute. He ruled that the statute was unambiguous and refused to add to it what he styled a "judicial amendment"; judgment was then entered dismissing the complaint.

We need not dwell on the question whether the judge should have entered a declaration rather than dismissing the complaint for failure to present a justiciable controversy.[6] The parties have fully argued the validity and effect of the statute and have provided us with a sufficient record to enable us to appraise their contentions. Since we find that the statute cannot in any event admit of the construction sought to be ascribed to it by the plaintiff, additional litigation will be avoided by our making a declaration now as to its validity and meaning. *City Manager of Medford* v. *Retirement Bd. of Medford*, 346 Mass. 638, 640 (1964). See also *Gibbs Realty & Inv. Corp.* v. *Carvel Stores Realty Corp.*, 351 Mass. 684, 686 (1967).

The complaint seeks a judicial construction of the statute to the effect that "banks subject to its provisions [be required to] pay a fair and reasonable rate of return." Without such a construction, it perceives an ambiguity in

require payment of a rate of return related to the return paid by the bank on other funds received and invested by it.

[6] We note, however, that motions to dismiss (or their pre-Rules of Civil Procedure equivalent, demurrers) have been utilized to examine the sufficiency of a c. 231A complaint on a variety of grounds. See generally *County of Dukes County* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.*, 333 Mass. 405 (1956); *Weinstein* v. *Chief of Police of Fall River*, 344 Mass. 314, 317 (1962); *Duane* v. *Quincy*, 350 Mass. 59, 61 (1966); *Johnson* v. *Framingham*, 354 Mass. 750, 754-755 (1968); *Greenberg* v. *Assessors of Cambridge*, 360 Mass. 418, 423 (1971); *Shank* v. *NLRB*, 260 F.2d 444, 446 (7th Cir. 1958); *DeKosenko* v. *State of N.Y.*, 311 F. Supp. 126, 128-130 (S.D.N.Y. 1969), aff'd per curiam, 427 F.2d 351 (2d Cir. 1970).

the statute—the lack of "a formula" by which the rate of interest to be paid on the escrow accounts is to be determined.[7]

We find the statute to be clear, specific, unambiguous, and not in need of judicial construction as to how the interest rate is to be set. It expressly provides that "[i]nterest shall be paid at least once a year at a rate and in a manner to be determined by the mortgagee," and provides for a reporting system to the Commissioner with reference to the amount of net profit or loss from the investment of the escrow deposits. The statute grants mortgagees the privilege of establishing their own rates, based on the condition of their respective escrow accounts and overall profits and losses with regard thereto. While this will lead to variations in interest rates among different banks, as demonstrated by one of the allegations in the complaint,[8] such variations are expressly contemplated by the statute, which leaves each bank to determine its own rate and to pay interest at least once a year unless exempted by the Commissioner. Thus, this is not a case where the Legislature's efforts could be considered to be futile or frivolous. The statute, as we read it, *requires* each bank to pay interest at some rate and permits a bank to avoid paying interest *only* when it can demonstrate a net loss from the investments of the tax deposits and then only after the Commissioner has granted an exemption. In this way, each mortgagor will either receive interest on his account or know, if interest is not paid, that his bank is incurring a loss on the investment of the deposits and that there has been an administrative determination

---

[7] As the plaintiff has not raised any issue as to the propriety of the Legislature's delegation to private parties of the task of determining interest rates, that issue is not before us on appeal. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See generally *Corning Glass Works* v. *Ann & Hope, Inc.* 363 Mass. 409, 420-423 (1973); *Arlington* v. *Board of Conciliation & Arbitration*, 370 Mass. 769, 775 (1976); *Arno* v. *Alcoholic Beverages Control Commn.*, 377 Mass. 83 (1979).

[8] See note 4, *supra*.

that the bank should be excused from paying interest. This is not a case where there is any contradiction in the statute which would require the court to "[i]nterpret . . . [it], if possible, so 'as to make it an effectual piece of legislation in harmony with common sense and sound reason.'" *Atlas Distrib. Co.* v. *Alcoholic Beverages Control Commn.*, 354 Mass. 408, 414 (1968), quoting from *Morrison* v. *Selectmen of Weymouth*, 279 Mass. 486, 492 (1932), nor is it a case where the statute "in certain aspects lacks precision and verbal consistency." *LaPierre* v. *Massachusetts Commn. Against Discrimination*, 354 Mass. 165, 174 (1968).

We think it also important to note that the plaintiff does not point to any language in the statute which is claimed to be ambiguous and in need of judicial interpretation, but proceeds instead on a view that what the Legislature determined is unfair.[9] By this argument she seeks to involve the court in judicial legislation by adding a sentence to the statute requiring payment of "a fair and reasonable rate of return to mortgagors on escrow deposits in accordance with customary investment guidelines and reasonably related to the return paid by the bank on other funds received and invested by it." As we read the statute,[10] its terms leave no room for the addition

---

[9] Any hardship or inequitable treatment caused by a statute may be considered only where the construction of the statute is doubtful and cannot be used to derogate from legislative intent which has been clearly expressed. *Tilton* v. *Haverhill*, 311 Mass. 572, 578 (1942). *Boston Five Cents Sav. Bank* v. *Assessors of Boston*, 317 Mass. 694, 702-703 (1945).

[10] *Mailhot* v. *Travelers Ins. Co.*, 375 Mass. 342, 348 n.7 (1978), suggests a useful approach to statutory construction. It comes from Professor Keeton's "guidelines" or canons on statutory construction (Keeton, Venturing to Do Justice 94-95 [1969]), and is as follows: "First: Apply the mandate of the statute if it appears that the Legislature did in fact both consider and prescribe for the problem at hand. Second: If the problem falls beyond the core area that the Legislature both considered and prescribed for, defer to the Legislature's manifested determination of principle and policy to the extent they can be ascertained and are relevant to the problem at hand" (footnote omitted). These canons are in point and support our view of the statute.

of such language, and any desired change in the statutory language would be for the Legislature to make in the first instance, not a court. *Ocean Spray Cranberries, Inc.* v. *State Tax Commn.*, 355 Mass. 592, 597 (1969). It is axiomatic that "statutes must be construed as written and cannot be rewritten judicially." *Commonwealth* v. *Brooks*, 366 Mass. 423, 427-428 (1974). Accord, *Milton* v. *Metropolitan Dist. Commn.*, 342 Mass. 222, 227 (1961); *Boylston Water Dist.* v. *Tahanto Regional Sch. Dist.*, 353 Mass. 81, 84 (1967).

We note also that the statute now under attack as vague and ambiguous is the product of extensive legislative consideration. The Legislature had bills before it for some time[11] with reference to payment of interest on escrow accounts and settled finally on the form of the statute in c. 183, § 61. It enacted this legislation with an effective date two years after enactment. The reporting requirements to the Commissioner are obviously designed to build a record as to how the rates paid balance with the profits or losses on each bank's investment of the escrow funds. This leads to the conclusion that the Legislature thought that the setting of the rates would best be left to the banks, at first, at least until concrete profit and loss figures should become available for some statistically

---

[11] It was submitted at argument that bills have been before the General Court for the last twenty years seeking to establish payment of interest in one fashion or another on residential mortgage tax escrow accounts. It appears that what is now c. 183, § 61, was picked from many proposals in response to litigation preceding this case (in which these plaintiffs participated). The litigation is described in *Carpenter* v. *Suffolk Franklin Sav. Bank*, 362 Mass. 770 (1973), *S.C.* 370 Mass. 314 (1976).

In 1977 a number of bills were filed to change the statute to require interest to be paid at a definite rate. The bills proposed various rates. At argument we were also told that similar bills were filed in 1978 and 1979. The variations between the proposed rates indicate that competing economic factors are present and suggest the Legislature's desire to see a history established before deciding how much interest should be paid.

valid period, since the formulation of a rate might well depend on financial and economic variables that could differ widely between lending institutions in the same and different geographic areas. Because of this discernible legislative goal, it would be unwise to consider whether the contentions made by the mortgagor and the bank as to the appropriate handling of the payment of interest on these accounts are sound as a matter of economics or public policy. The Legislature has reserved that question to itself, *Massachusetts Housing Fin. Agency* v. *New England Merchs. Natl. Bank,* 356 Mass. 202, 212 (1969), on an issue which the Supreme Judicial Court has termed a "good illustration of the advantages of legislative law reform as compared with reform by judicial decision," *Carpenter* v. *Suffolk Franklin Sav. Bank,* 370 Mass. 314, 327 (1976). So we find that any attempt to add to the statute the language sought by the plaintiff, in the absence of any obvious ambiguity or any discernible vagueness, would be disruptive of the Legislature's efforts in the area and its consideration and balancing of competing expectations on the topic.[12]

Finally, we have carefully reviewed the cases brought to our attention by the plaintiff concerning the perceived infirmities in the statute and find the cases neither controlling nor persuasive, since they deal with circumstances where courts have become involved with the review of utility rates after they had been set by administrative agencies charged with that obligation, cases where the courts have been obliged to weigh potentially

---

[12] We are not impressed with the plaintiff's argument that banks may be enriched as a result of being able to set their own rates. The Legislature apparently considered this in picking this piece of legislation from the many it had before it, and "[i]t is, of course, no objection to an honest legislative solution of a public problem that it will incidentally lead to private profit or advantage." *Pierce* v. *Wellesley,* 336 Mass. 517, 522 (1957). Also, if any unjust enrichment in fact occurs the enrichment will probably run to the benefit of the bank's depositors. See *Carpenter* v. *Suffolk Franklin Sav. Bank,* 370 Mass. at 327.

conflicting fundamental rights, and cases where particular statutes plainly invested the court with the power to review the results of administrative rate setting proceedings. In sum, this is not a situation where the Legislature has omitted any standards from the statute or enacted a vague piece of legislation, but rather a case where the Legislature has decided to give mortgagors some measure of relief while continuing to collect data which may permit a more exact determination of rates based on those data in the future.

The judgment of dismissal is vacated, and a new judgment is to be entered which determines the rights of the parties in accordance with the conclusions expressed in this opinion.

*So ordered.*