Rossmoore Pilot Training Company, Inc. & another *vs.* Town of Provincetown & others.

Barnstable. October 16, 1979. — February 1, 1980.

Present: Brown, Dreben, & Kass, JJ.

*Practice, Civil,* Motion to dismiss. *Airport,* Lease. *Lease,* Airport commission. *Administrative Law,* Regulation.

Where plaintiffs seeking declaratory and injunctive relief against a municipal airport commission alleged that the defendant had acted arbitrarily and in excess of its authority in that it had failed to establish standards for the granting and denial of permits; that it had failed to establish any schedule of fees; that it had set an unreasonable charge in violation of G. L. c. 90, § 51H; and that it had required the plaintiffs, who were engaged in the business of providing flight instruction and airplane rentals, to enter into a lease for unneeded facilities, their complaint was sufficient to withstand a motion to dismiss. [99-101]

Civil action commenced in the Superior Court on January 30, 1978.

A motion to dismiss was heard by *Prince, J.*

*William Rossmoore (Charles F. Dudley* with him) for the plaintiffs.

*Thomas C. Paquin,* Assistant Town Counsel, for the defendants.

Dreben, J. This is an action brought by William Rossmoore and his wholly owned corporation, Rossmoore Pilot Training Co., Inc. (RPT), against the town of Provincetown, the Provincetown airport commission (commission) and its individual members requesting declaratory and injunctive relief. The plaintiffs allege that the commission's regulations (§ II[a]) which require the plaintiffs to obtain a permit and to enter into such written lease as may be "prescribed by the [c]ommission" are invalid because they fail to provide any standards for the commission's actions. The

plaintiffs also allege that the rent set by the commission is unreasonable and does not comport with G. L. c. 90, § 51H.

The trial judge granted the defendants' motion to dismiss the complaint under Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974), for failure to state a claim. We hold that the dismissal of the plaintiffs' complaint was erroneous.[1]

For purposes of determining the sufficiency of the complaint, the allegations of the complaint, the exhibits, and the inferences that may be drawn in the plaintiffs' favor are taken to be true. *Whitinsville Plaza, Inc.* v. *Kotseas,* 378 Mass. 85, 87 (1979), and cases cited therein. We summarize the allegations as contained in the complaint and accompanying documents[2] from this perspective.

RPT is engaged in the business of providing flight instruction and airplane rentals. Originally, these services were performed under contracts and leases approved by the commission with Provincetown-Boston Airline, Inc., but in 1975 RPT entered into a direct lease with the town. The lease provided for the rental of: (a) the pilots' lounge building; (b) an area for a display sign and identification; and (c) an area, to be arranged with the airport manager, for the tie down of one aircraft. The term of the lease was for three months, from June 15 to September 15, 1976, and the rental was $500. The lease contained numerous other terms not here relevant.

At the expiration of the 1976 lease RPT decided that it had no need of the pilots' lounge building and in November applied for a permit which would allow it to use the airport's facilities without the lounge. RPT claimed it only wanted to use such facilities at the airport "as are available to the gener-

---

[1] We need not consider the question whether the judge should have entered a declaration instead of dismissing the complaint. See *Larkin* v. *Charlestown Sav. Bank,* 7 Mass. App. Ct. 178, 181 & n.6 (1979).

[2] These are a lease between the town and RPT, correspondence between the defendants and the plaintiffs, and regulations of the commission as published in the Provincetown Advocate in 1974.

al public." It is clear from the correspondence that the plaintiffs wanted to avoid payment of the $500 rental fee.[3]

On May 10, 1977, the commission denied the application[4] and offered instead to renew the 1976 lease for the period June 15 to September 15, 1977. Despite its dissatisfaction, RPT signed the lease because of the short time remaining before the 1977 summer season. At the end of the summer, RPT again applied for a permit to use the airport without renting the lounge. In a letter of reply dated December 6, 1977, the chairman of the commission advised Rossmoore that he had shown the application to the commission members and stated, "Informally we are ready to reinstate the arrangements of last year. . . . The charges and insurance requirements would be the same pending final vote by the commission."

On January 30, 1978, the plaintiffs filed this action, claiming that the commission had acted arbitrarily and in excess of its authority in a number of ways, including that it had failed to establish any standards for the granting or denial of permits; that it had failed to establish any schedule of fees; and that it had set an unreasonable charge of $500 in violation of G. L. c. 90, § 51H,[5] and had required the plaintiffs to enter into a lease for unneeded facilities.

---

[3] RPT, in a letter dated April 13, 1977, in which it stated that it did not want to rent any facilities, suggested that the fees for its permit should be in line with charges for "similar permits." It wrote: "The nearest comparable fees that I have been able to find are the following: 1. The town of Provincetown charges $5.00 for an annual taxi license. 2. The Cape Cod National Seashore charges $3.00 per seat plus $5.00 per driver for an annual dune taxi permit."

[4] The plaintiffs in December, 1976, submitted an alternate plan and in April, 1977, withdrew the November proposal. The April application was the one actually rejected.

[5] General Laws c. 90, § 51H, as appearing in St. 1949, c. 769, § 2, provides: "An airport commission shall determine the charges or rentals for the use of any properties, facilities, installations, landing fees, concessions, uses and services and shall determine the terms and conditions under which contracts may be executed by the commission on behalf of such city or the town. Such charges or rentals shall be reasonable and shall be established with due regard to the property used and the expenses

We consider these allegations sufficient to withstand a motion to dismiss. From what appears in the complaint and the regulations there are no standards to guide the commission in setting the terms for its leases. The regulations adopted by the commission pursuant to G. L. c. 90, § 51J, inserted by St. 1946, c. 613, § 1,[6] merely provide that no person may use the airport for commercial activities without obtaining a permit and without entering "into such written leases . . . as are prescribed by the [c]ommission."[7]

If, as alleged, the regulation is so broad as to give the commission unbridled discretion, the complaint states a claim. *Newton* v. *Belger,* 143 Mass. 598 (1887). *Winthrop* v. *New England Chocolate Co.,* 180 Mass. 464, 466 (1902). *Commonwealth* v. *Maletsky,* 203 Mass. 241, 246 (1909). *Commonwealth* v. *Diaz,* 326 Mass. 525, 530-532 (1950). *Commonwealth* v. *Protami,* 354 Mass. 210, 210-211 (1968). An action seeking declaratory relief is an appropriate method for judicial review of the regulations of the commission. *Boston Licensing Bd.* v. *Alcoholic Beverages Control Commn.,* 367 Mass. 788, 792 (1975). *Samel* v. *Pittsfield Licensing Bd.,* 377 Mass. 908 (1979).

It may be that at trial evidence will show that the facilities rented to RPT, including the pilot's lounge, are the usual and necessary facilities of an airport and that the rental was established in accordance with G. L. c. 90, § 51H.

---

to the airport commission of the operation thereof. In all such contracts as may be executed for the foregoing privileges or licenses or any of them the public shall not be deprived of its rightful, legal and uniform use of such properties, facilities and installations."

[6] General Laws c. 90, § 51J, provides in part that an "airport commission shall adopt rules and regulations for the use of municipal airports or for the safety of the public . . . ."

[7] The regulations of the commission provide in part (§ II[a]) that "No person, firm or corporation shall use the airport or any portion thereof as a fixed base operator or flight operator for revenue producing commercial, business or aeronautical activities who has not first obtained consent and a permit for such activities from the Commission and entered into such written leases and other agreements as are prescribed by the Commission."

The factual background of the commission's regulations may also show that there are implicit standards guiding the commission in its leases if the regulations are read together with G. L. c. 90, § 51H, and the other statutory provisions of c. 90, §§ 35-52. See *Selectmen of Truro* v. *Outdoor Advertising Bd.*, 346 Mass. 754, 760 (1964). For these reasons, we believe that in this action declaratory relief should be given only after the benefit of a record of facts agreed upon or established by proof.[8] *Whitinsville Plaza, Inc.* v. *Kotseas, supra* at 100. We find it unnecessary to determine whether the complaint is sufficient under other theories alleged by the plaintiffs. See *Nader* v. *Citron*, 372 Mass. 96, 105 (1977). It is not subject to dismissal if it supports relief on any theory of law. *Whitinsville Plaza, Inc.* v. *Kotseas, supra* at 89. We also do not reach the question whether all the defendants in all their capacities are proper parties or whether the plaintiffs have standing to challenge other parts of the regulations. These matters have not been argued in the defendants' brief. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

*Judgment reversed.*

---

[8] The plaintiffs moved for summary judgment in the trial court. However, as indicated in the text accompanying this note, the record in its present state is insufficient for an appraisal of the contentions of the parties.