HAROLD GLASS & another[1] *vs.* CITY OF LYNN & another.[2]

No. 98-P-197.

Essex. November 17, 1999. - June 8, 2000.

Present: JACOBS, SMITH, & GREENBERG, JJ.

*National Guard. Public Employment,* Military leave. *Statute,* Construction.

This court concluded that the provisions of G. L. c. 33, § 59, which allow a State, county or municipal employee entitlement to pay during any annual tour of duty in the United States armed forces reserves, applies to no more than the first seventeen calendar days of such an annual tour of duty. [354-356]

CIVIL ACTION commenced in the Superior Court Department on May 9, 1996.

The case was heard by *Richard E. Welch, III,* J., on motions for summary judgment.

*David F. Grunebaum* (*Thomas J. Marcoline* with him) for the defendants.

*Stephen C. Pfaff* for the plaintiffs.

JACOBS, J. The plaintiffs are employed as police officers by the city of Lynn and are also members of the Army National Guard. In their complaint for declaratory relief, they claim that the defendant city did not properly compensate them under G. L. c. 33, § 59, for periods during which they were fulfilling their National Guard service obligation while on military leaves of absence from their city employment. Acting on cross motions for summary judgment, a Superior Court judge allowed that of the plaintiffs, declaring that the "seventeen day military allowance" of G. L. c. 33, § 59, is to be applied "not consecutively, but on scheduled work days. . . ." The defendants appeal, es-

---

[1] Charles Luise.
[2] John Hallow, as he is chief of police of Lynn.

sentially arguing that § 59 should be read as protecting against loss of a governmental employee's ordinary pay for up to seventeen consecutive days of his annual tour of duty with the military.

At all relevant times, the pertinent parts of G. L. c. 33, § 59, provided as follows:

> "Any person in the service of the commonwealth, or of a county, city or town . . . , shall be entitled, during the time of his service in the armed forces of the commonwealth, under section thirty-eight, forty, forty-one, forty-two or sixty, or during his annual tour of duty of not exceeding seventeen days as a member of a reserve component of the armed forces of the United States, to receive pay therefor, without loss of his ordinary remuneration as an employee . . . , and shall also be entitled to the same leaves of absence or vacation with pay given to other like employees . . . ."[3]

The practical effect of the contending views is illustrated by the facts relating to the plaintiff, Harold Glass. Responding to military orders, Glass took a leave of absence from July 19, 1993,[4] through August 24, 1993. At the time he took his leave, he had been employed by the city on a "five and two" shift which entailed his working from Monday through Friday of each week, with Saturday and Sunday off. The city paid Glass for the days he normally would have been scheduled to work during the seventeen-day period beginning July 19, 1993, and ending August 4, 1993. Under the city's interpretation, Glass

---

[3]After the judgment in this case, St. 1998, c. 49, approved March 12, 1998, substituted "34 days in any state fiscal year and not exceeding 17 days in any federal fiscal year" for "seventeen days." Just prior to oral argument, the defendants submitted information pursuant to Mass. R.A.P. 16(l), as amended, 386 Mass. 1247 (1982), to the effect that the purpose of the amendment is to permit a member of the National Guard whose tours of duty fall in, for example, July of one calendar year and June of the next, thereby occurring in the two Federal fiscal years (October 1 through September 30), see 31 U.S.C. § 1102 (1994), but only involving one State fiscal year (July 1 through June 30), see G. L. c. 4, § 7, Ninth, to be eligible to receive his ordinary pay under § 59 for each tour.

[4]Although Glass requested that his leave start on July 18, 1993, the city treated the leave as commencing on July 19, 1993. The plaintiffs do not quarrel with this approach and our analysis proceeds on the basis that leave was taken from Monday, July 19, 1993.

was not paid his ordinary municipal pay for the remainder of his military leave between August 5, 1993, and August 24, 1993. Consequently, he elected to take paid vacation days to which he was entitled for each weekday of that remaining period. Claiming that he received police pay for only the thirteen work days which fell during the July 19 to August 4, 1993, period, he seeks reimbursement in this action for the vacation days he used for August 5, 6, 9, and 10, 1993, on the ground that § 59 entitled him to his normal pay as a police officer for the city for the first seventeen *work* days which otherwise would have been scheduled during his military leave. While not quarreling with Glass's right to take military leave, the city contends that it is obligated to pay him only for the days he was scheduled to work during the first seventeen calendar days of that military leave.[5]

We construe the seventeen-day limitation in G. L. c. 33, § 59, to apply to the "annual tour of duty" of the plaintiffs. "It is the general rule of statutory as well as grammatical construction that a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation." *Hopkins* v. *Hopkins*, 287 Mass. 542, 547 (1934). See *Moulton* v. *Brookline Rent Control Bd.*, 385 Mass. 228, 230-231 (1982). Therefore, we read the words "of not exceeding seventeen days" as modifying "annual tour of duty." We discern nothing in the subject matter or purpose of the legislation which dictates a contrary interpretation.

Proceeding to the operative clause following the seventeen-day limitation and consisting of the words "to receive pay therefor" and applying the plain meaning and common usage rules of statutory construction, see G. L. c. 4, § 6, Third; Singer, Statutes and Statutory Construction § 46:01 (6th ed. 2000), we interpret the pay entitlement to apply to no more than the first seventeen calendar days of an annual tour of duty. Read in a straightforward manner, and according to its common and approved usage, the language of § 59 supports the conclusion that the purpose of the portion of the statute under review is to

---

[5]In their brief, the defendants note that "Federal law requires that the National Guard pay its members for their military service," citing 32 U.S.C. §§ 501 et seq., and observe that "[t]here has been no evidence or suggestion that Officers Glass and Luise did not receive pay from the National Guard for the entire duration of their military tour(s)." See 37 U.S.C. § 204(a)(2) (1994).

protect against loss of the ordinary remuneration which would have been paid during the first seventeen calendar days of an annual tour of duty. This construction is supported by case law holding that "the word 'day' when not qualified means a calendar day." *Booker* v. *Chief Eng. of the Fire Dept. of Woburn,* 324 Mass. 264, 266 (1949). See *Opinion of the Justices,* 291 Mass. 572, 577 (1935). There is nothing in the statute which indicates that the word "day" is to be construed as a work day or that the period of entitlement to pay should extend for varying periods of time beyond the first seventeen calendar days of an annual tour of duty, depending on the number of an employee's work days that fall within those seventeen days.

As illustrated in the case of the plaintiff Glass, the contending views result in different pay only if an employee's tour of duty extends beyond seventeen calendar days. Had the Legislature intended to afford pay during such an extended period, it readily could have so provided by stating that an employee on military leave would be entitled to pay for each day of that leave during which he ordinarily would have been scheduled to work, not exceeding seventeen such *work* days.

While acknowledging the plain meaning of the section, the judge looked past its narrow purpose in order to limit the financial loss to the plaintiffs. "To stretch the meaning of a statute so as to adjust an alleged injustice, inequity or hardship could cause a multiplicity of interpretations as each alleged injustice, inequity, or hardship arose." *Milton* v. *Metropolitan Dist. Commn.,* 342 Mass. 222, 227 (1961). Given the variety of work schedules of government employees and the different durations of military tours of duty, as here illustrated, our decision reduces the potential for such a multiplicity of interpretations. Moreover, because the statutory language is reasonably clear and essentially unambiguous, we have no occasion to consider whether its application in this case works any hardship. See *Pierce* v. *Christmas Tree Shops, Inc.,* 429 Mass. 91, 93 (1999), and cases cited; *Larkin* v. *Charlestown Sav. Bank,* 7 Mass. App. Ct. 178, 183 n.9 (1979). To the extent there may be hardship resulting from the express limitations imposed by § 59 on those whose annual tours of military duty exceed the traditional two-week training period, amelioration must be left to the Legislature.

We agree with the defendants that the city's position is reinforced by the legislative history of § 59. When the section

was amended in 1956 by changing the description of the annual tour of duty by inserting the word "seventeen" in place of the word "fifteen," the then Governor filed an emergency message with the Secretary of State which stated:

> "Under our present law state, county and municipal employees who are in the armed forces of the commonwealth are entitled to fourteen days active duty service with their units without having the days charged against their vacation period or their pay. A new plan of training requires that certain of these employees in our armed services leave for duty in advance of the regular troops. In order that the employee would not lose pay or vacation time for these additional days the period has been by this act extended to seventeen days."

St. 1956, c. 378.[6] This message is further indication that the seventeen-day provision was intended to protect against loss of normal pay or vacation during the period, not exceeding seventeen calendar days, that certain public employees fulfill their annual military service obligations.

Our interpretation is also supported in an opinion of the Attorney General of the Commonwealth construing the "during his annual tour of duty of not exceeding fifteen days" provision of a predecessor to § 59. In that opinion, rendered with respect to a naval reserve officer, the Attorney General stated: "If the period of training . . . is . . . more extensive than his annual tour of duty of fifteen days . . . , [the officer] will not be entitled to his salary while so separated from the Commonwealth's public service." Rep. A.G., Pub. Doc. No. 12, at 105 (1940).[7]

The pattern of military leave taken by the plaintiff Luise raises an additional issue. Luise took military leave for a

---

[6]Although the text of the Governor's message as printed in the Acts of 1956, refers to a period of "fourteen days active duty service," § 59 at that time described the annual tour of duty as "not exceeding fifteen days."

[7]The plaintiffs rely on an earlier opinion of the Attorney General, Rep. A.G., Pub. Doc. No. 12, at 124, 125 (1939), which addressed the rights of remuneration of "a member of the organized militia" whose service was required under predecessor sections to G. L. c. 33, §§ 38, 40, 41, 42 and 60. Those sections all deal with service ordered by the Governor in connection with special duty assignments, emergencies, invasions, insurrections, riots, natural disasters and the like. To the same effect see Rep. A.G., Pub. Doc. No. 12, at 33 (1940), and Rep. A.G., Pub. Doc. No. 12, at 14 (1950).

sixteen-day tour of duty in May of 1995. He later took further leave between November 3 and November 17, 1995. The city ruled that Luise was entitled, under § 59, to his regular compensation during the sixteen consecutive days of his May tour of duty and that he was not entitled to such benefits for the November, 1995, tour of duty, essentially arguing that § 59 applied by its terms only to a single, annual tour of duty and not to multiple tours of duty in any year. We need not address the defendants' argument because the amendment to § 59, see note 3, *supra*, inserting the words "34 days in any state fiscal year and not exceeding 17 days in any federal fiscal year" indicates that the seventeen-day limitation applies to a Federal fiscal year, defined by 31 U.S.C. § 1102 (1994), as beginning on "October 1 of each year and end[ing] on September 30 of the following year." Because Luise does not base his claim for reimbursement for his November, 1995, tour of duty on the fact that it occurred in a different Federal fiscal year from the tour served in May of 1995 and the city's argument is grounded on both of Luise's tours falling within the same calendar year, we need not address the question whether the term "annual tour of duty of not exceeding seventeen days" must be construed as describing a single period of seventeen *consecutive* calendar days or may be interpreted as applying to seventeen intermittent days of service.[8]

The summary judgment submissions and the judge's decision focus entirely on the interpretation of the clause in § 59 containing the "seventeen days" provision and the arguments to this court proceed along the same vein except for a footnote in the plaintiffs' brief in which they argue that their orders were issued pursuant to G. L. c. 33, § 60, and that they, therefore, are entitled to protection against loss of ordinary remuneration during *all* of their military service. The argument relies on the first clause of § 59 which can be read as protecting against loss of pay and vacation time during all military service performed under orders made pursuant to G. L. c. 33, §§ 38, 40, 41 or 60.[9] We decline to address this argument because it is made for the first time on appeal, *Gagnon, petitioner*, 416 Mass. 775, 780

---

[8] We, therefore, need not determine whether the issue is controlled by a dictionary definition of "annual," see Black's Law Dictionary at 89 (6th ed. 1990) ("[o]ccurring or recurring once in each year"), or by Federal orders which at times entail more than one tour of duty in a Federal fiscal year.

[9] Of no significance to this opinion is the fact that the section forty-two referred to in § 59 was repealed by St. 1979, c. 134, § 2.

(1994), and, in any event, because "[a]rguments relegated to a footnote do not rise to the level of appellate argument." *Commonwealth* v. *Lydon,* 413 Mass. 309, 317-318 (1992).[10]

There is no merit in the plaintiffs' assertion that they were "forced" to use their vacation or personal time when their orders required the taking of more than seventeen calendar days of military leave. During such extended period, it is the employee's election to use any accumulated vacation or personal leave to which he is entitled or to choose unpaid leave.

Accordingly, we reverse the judgment and remand this matter to the Superior Court for the entry of a judgment declaring that the seventeen-day provision of G. L. c. 33, § 59, protected the plaintiff Glass in Federal fiscal year 1993 and the plaintiff Luise in Federal fiscal year 1995 against the loss of their ordinary remuneration as police officers only during the first seventeen calendar days of their annual tours of military duty.

*So ordered.*

---

[10]For a description of some of the distinctions between National Guard duty performed in State status and federalized status, see Rep. A.G., Pub. Doc. No. 12, at 122 (1977). See also G. L. c. 33, § 83, providing for payment for duty performed under § 60 to be made from funds "appropriated therefor" by the Legislature. Noteworthy also is Rep. A.G., Pub. Doc. No. 12, at 14, 16 (1950), which states: "It seems clear from the language of section 54 [now 59] that the Legislature wished to preserve to the full the State pay of its servitors who were part of its own military forces as distinct from the military or naval branches of the Federal Government. As to the latter, the Legislature wished to preserve only fifteen [now seventeen] days of such State pay."