APPEALS COURT 
 
 ROBERT DRISCOLL vs. CITY OF MELROSE

 
 Docket:
 24-P-1114
 
 
 Dates:
 May 13, 2025 – November 21, 2025
 
 
 Present:
 Blake, C.J., Ditkoff, & Brennan, JJ.
 
 
 County:
 Middlesex
 

 
 Keywords:
 National Guard. Fire Fighter. Public Employment, Military leave. Municipal Corporations, Fire department, Officers and employees. Practice, Civil, Summary judgment. Statute, Construction.
 
 

       Civil action commenced in the Superior
Court Department on March 10, 2022. 
      The case was heard by James Budreau, J.,
on motions for summary judgment. 
      Patrick N. Bryant for the plaintiff.
      Stephen C. Pfaff for the defendant.
      Andrea Joy Campbell, Attorney General,
David C. Kravitz, State Solicitor, & Gerard J. Cedrone, Deputy State
Solicitor, for the Attorney General, amicus curiae, submitted a brief.
      DITKOFF, J.  The plaintiff, Robert Driscoll (firefighter),
appeals from the entry of summary judgment in favor of the defendant, the city
of Melrose (city).  General Laws
c. 33, § 59 (a), requires participating government entities to
pay the full salary of an employee performing certain military service for
"40 days in any federal fiscal year," and states that a day
"shall mean any 24-hour period regardless of calendar day."  Applying the plain meaning of these words, we
conclude that the firefighter is entitled to pay for up to forty twenty-four
hour shifts missed during his military service in each Federal fiscal year, and
not (as the city claims) up to twenty such shifts in a consecutive period of
forty days.  Accordingly, we reverse.
      1. 
Background.  The operative facts
are undisputed.  The city employed the
firefighter from 2002 until his retirement in October 2022.  Pursuant to the collective bargaining
agreement (CBA) between the city and the firefighters' union, the firefighter
worked a twenty-four hour shift "followed by one (a) day off, then one (a)
twenty-four hour shift followed by five (5) days off."[1]  Each twenty-four hour shift began at 7 A.M.
and concluded the following calendar day at the same time.  Pursuant to the CBA, the twenty-four hour
shift consisted of two separate shifts: 
a ten-hour day shift followed by a fourteen-hour night shift.  For purposes of vacation or sick leave, the
ten-hour and fourteen-hour shifts were considered separate days, amounting to
two total days for one twenty-four hour shift. 
Accordingly, a firefighter who missed a twenty-four hour shift because
of a vacation or illness would expend two days of vacation time or sick time.
      During the entire time that the
firefighter worked for the city, he served as an officer in the United States
Air Force, reaching the rank of colonel in the Air National Guard.  This role required the firefighter to take
occasional leave for military service, both for training and after being called
up for active duty.  Relevant here,
between October 2019 and March 2020, the firefighter missed six twenty-four
hour shifts for military training.  On
April 10, 2020, he went on active military leave and missed thirty-two
twenty-four hour shifts between that date and August 14, 2020.  In August and September 2020, the firefighter
missed another four twenty-four hour shifts for military training.
      The next Federal fiscal year began on
October 1, 2020.  See 31 U.S.C.
§ 1102.  In October 2020, the
firefighter missed one twenty-four shift and one fourteen-hour night shift for military
training.  On November 28, 2020, the
firefighter was again deployed for active military service, which lasted until
September 5, 2021.  During that time, he
missed seventy twenty-four hour shifts.
      After some back and forth, the city paid
the firefighter in full for twenty twenty-four hour shifts in each Federal
fiscal year.  The plaintiff filed a
lawsuit in Superior Court asking that the court issue a declaratory judgment
declaring that he was entitled to be paid in full for forty twenty-four hour
shifts in each Federal fiscal year. 
Relying on an opinion of our court construing a prior version of
G. L. c. 33, § 59 (a), Glass v. Lynn, 49 Mass. App. Ct.
352, 353-355 (2000), the city defended by arguing that it was required to pay
in full only for military service within "the first 40 consecutive
calendar days of an annual tour of duty" and that a twenty-four hour shift
counts as two days of military leave.[2]
      The parties stipulated to the relevant
facts and filed cross-motions for summary judgment.  A Superior Court judge entered judgment for
the city, finding that the "Plaintiff is entitled to be compensated only
for the time he would have worked during a consecutive 40 day period."  This appeal followed.
      2. 
Standard of review.  Summary
judgment is appropriate where there are no genuine issues of material fact and
the moving party is entitled to judgment as a matter of law.  See Mass. R. Civ. P. 56 (c), as amended,
436 Mass. 1404 (2002); Kourouvacilis v. General Motors Corp., 410 Mass. 706,
716 (1991).  "We review a grant of
summary judgment de novo . . . ."  Blake v. Hometown Am. Communities, Inc., 486
Mass. 268, 272 (2020), quoting DeWolfe v. Hingham Centre, Ltd., 464 Mass. 795,
799 (2013).
      3. 
General laws c. 33, § 59 (a).  a. 
Overview.  General Laws
c. 33, § 59, sets forth a statutory scheme that provides certain
public employees compensation for their civilian employment while on leave for
active duty or reserve military service. 
In broad strokes, § 59 (a) provides full pay for a limited number
of days for service in the reserve or State military.  Section 59 (d) provides differential pay
(that is, the difference between the employee's regular salary and the
employee's military salary) for an unlimited period of time.  Section 59 (b) and (c) provides similar
compensation for state military service under particular statutes.  As the Attorney General informs us, the
evident purpose of this statute is "to encourage state employees to serve
in the militia or reserves."  See
Opinion of the Attorney General, Rep. A.G., Pub. Doc. No. 12, at 125
(1977).  Such service benefits the State
and local government both by increasing the number of soldiers protecting the
country and the Commonwealth and by providing the government with the myriad
advantages of military training for its employees.
      The statute applies to all State
employees.[3]  G. L. c. 33,
§ 59 (a)-(d).  It also applies
to the employees of any county or municipality that has voted to adopt it.  G. L. c. 33,
§ 59 (e).  The parties agree
that the city has adopted the statute.
      "Our primary duty in interpreting a
statute is 'to effectuate the intent of the Legislature in enacting
it.'"  Commonwealth v. Sabin, 104
Mass. App. Ct. 303, 305 (2024), quoting Commonwealth v. Sousa, 88 Mass. App.
Ct. 47, 49 (2015).  "The language of
the statute is the starting point for all questions of statutory
interpretation."  Sabin, supra,
quoting Bank of N.Y. Mellon v. Morin, 96 Mass. App. Ct. 503, 507 (2019).  "Statutory language should be given
effect consistent with its plain meaning. 
Where . . . that language is clear and unambiguous, it is
conclusive as to the intent of the Legislature."  Bank of N.Y. Mellon, supra, quoting Patriot
Resorts Corp. v. Register of Deeds for the County of Berkshire, N. Dist., 71
Mass. App. Ct. 114, 117 (2008).
      This case involves the firefighter's
rights under G. L. c. 33, § 59 (a), which provides the
following:
"An employee
of the commonwealth in the service of the armed forces of the commonwealth or a
reserve component of the armed forces of the United States shall be entitled to
receive pay without loss of ordinary remuneration as a public employee during
service in the uniformed services, annual training under section 60 or drills
and parades under section 61, not exceeding 40 days in any federal fiscal year,
and shall not lose any seniority or any accrued vacation leave, sick leave,
personal leave, compensation time or earned overtime. . . .  For the purposes of this subsection, 'day'
shall mean any 24–hour period regardless of calendar day."
      The parties bring two disputes about the
interpretation of this subsection.  The
city argues that the full salary provided by § 59 (a) applies only
for service within the first forty consecutive days in any Federal fiscal year;
the firefighter and the Attorney General argue that it applies to any forty
days within a Federal fiscal year.  The
city also argues that each twenty-four hour shift counts as two days of
service; the firefighter and the Attorney General argue that any twenty-four hour
period counts as only one day of service.[4] 
We agree with the firefighter and the Attorney General on both issues.
      b. 
Meaning of "not exceeding forty days."  The plain and ordinary meaning of G. L.
c. 33, § 59 (a), is that a public employee must be compensated
for forty days of military leave per Federal fiscal year, whether or not they
are consecutive.  The operative clause,
"during service in the uniformed services, annual training under section
60 or drills and parades under section 61, not exceeding 40 days in any federal
fiscal year," does not impose any requirement that those forty days be
consecutive, rather than merely in a single Federal fiscal year.  The Legislature's decision to omit such a
requirement was purposeful as two of the statute's other subsections,
§ 59 (b) and § 59 (d), expressly refer to service lasting
"30 consecutive days."  See
Donis v. American Waste Servs., LLC, 485 Mass. 267, 266 (2020), quoting
Commonwealth v. Johnson, 482 Mass. 830, 835 (2019) ("[T]he omission of
particular language from a statute is deemed deliberate where the Legislature
included [the] omitted language in related or similar statutes").  See also Commonwealth v. Dossantos, 472 Mass.
74, 80-81 (2015) ("the Legislature clearly knew how to reference a probable
cause standard, and chose not to do so in defining the judge's role in
connection with the initial placement of an abuse allegation statement in
the" domestic violence record keeping system).  The city's interpretation requires us to add
the word "consecutive" to the statute, which is well beyond our
authority.  See Cristo v. Worcester
County Sheriff's Office, 98 Mass. App. Ct. 372, 379 (2020) ("It is not,
however, within our authority to rewrite a statute").
      The statute's expansive coverage further supports
the omission of a consecutiveness requirement. 
See Plymouth Retirement Bd. v. Contributory Retirement Appeal Bd., 483
Mass. 600, 604 (2019) (statute must be "read as a coherent whole");
Retirement Bd. of Stoneham v. Contributory Retirement Appeal Bd., 476 Mass.
130, 135 (2016) ("Courts must look to the statutory scheme as a
whole").  As noted, the statute
applies to public employees engaged in either active duty or reserve service.  G. L. c. 33,
§ 59 (a).  The statute
specifically includes National Guard members under reserve service through its
references to "annual training under section 60 or drills and parades
under section 61."  G. L.
c. 33, § 59 (a).  As the
"drills and parades" under G. L. c. § 61 requires
National Guard members to "assemble for training at least 48 times in each
year" for training, it is apparent that the statute presupposes that a
public employee in the National Guard would apply this recurring training
obligation to the statute's forty-day limit throughout a calendar year.  G. L. c. 33,
§ 61 (a).  Conversely, if a
consecutiveness requirement were imposed, a National Guard member would exhaust
the total forty-day allotment through just twelve weekend days, creating
inequitable results between reserve and active duty servicemembers.
      To counter the plain meaning of the
statute, the city relies on Glass v. Lynn, 49 Mass. App. Ct. 352, 353 (2000),
which interpreted a prior version of G. L. c. 33, § 59, which
provided full pay for an employee "during his annual tour of duty of not
exceeding seventeen days as a member of a reserve component of the armed forces
of the United States . . . ."  G. L. c. 33, § 59, as amended
by St. 1956, c. 378.  We had
little trouble determining that "the term 'annual tour of duty of not
exceeding seventeen days' must be construed as describing a single period of
seventeen consecutive calendar days . . . ."  Glass, supra at 357.
      The city invokes the principle "that,
when a statute after having been construed by the courts is re-enacted without
material change, the Legislature are presumed to have adopted the judicial
construction put upon it." 
Commonwealth v. Rivera, 445 Mass. 119, 128 (2005), quoting Nichols v.
Vaughan, 217 Mass. 548, 551 (1914). 
Accord Bellalta v. Zoning Bd. of Appeals of Brookline, 481 Mass. 372,
383 (2019); Chapoteau v. Bella Sante, Inc., 103 Mass. App. Ct. 254, 260 n.16
(2023).  In doing so, however, the city
overlooks the keystone of this principle: 
that the statute "is re-enacted without material change."  Rivera, supra.  This doctrine has no application, in logic or
law, when the statute has been materially amended.
      Here, the Legislature rewrote G. L.
c. 33, § 59, in 2014, eliminating completely the language we
construed in Glass.  St. 2014,
c. 307, § 42.  Under those
circumstances, we can engage in no presumption that the Legislature approved of
our opinion in Glass, except to the extent that it may have agreed with our
exhortation that, to the "extent there may be hardship resulting from the
express limitations imposed by § 59 on those whose annual tours of
military duty exceed the traditional two-week training period, amelioration
must be left to the Legislature." 
Glass, 49 Mass. App. Ct. at 355. 
Accordingly, we apply the plain meaning of the statutory text, which
requires payment for forty days of service within a Federal fiscal year,
regardless of whether those forty days are consecutive.
      c. 
Meaning of "day." 
Regarding whether a twenty-four hour shift counts as one day of service,
the statute is explicit:  "'day' shall
mean any 24-hour period regardless of calendar day."  G. L. c. 33,
§ 59 (a).  Indeed, this
definition appears to address directly our statement in Glass that "the
word 'day' when not qualified means a calendar day."  Glass, 49 Mass. App. Ct. at 355, quoting
Booker v. Chief Eng'r of the Fire Dep't of Woburn, 324 Mass. 264, 266
(1949).  Accordingly, a twenty-four hour
shift counts as only one day of leave under § 59 (a).
      To counter this, the city provides an
e-mail message from an Air Force captain that indicates that the intent of the
"day" definition was to "prevent the double shift issue (working
both mil[itary] and civ[ilian] positions in the same 24 hour
period)."  According to the
stipulated facts, this interpretation was "indicated" by a particular
colonel described as "one of MA National Guard's Senior Attorneys who
assisted in drafting the language in section G.L. c. 33, s. 59(a) for
the Legislature."  How the
definition of "day" prevents an employee from performing civilian
work within twenty-four hours of military service is unexplained.[5]
      Even those susceptible to the siren call
of statements of individual legislators explaining their personal understanding
of laws would require no beeswax in their ears to resist this argument.  A hearsay statement of what was
"indicated" by a person who assisted in drafting statutory language
is entitled to no weight.  Instead,
"[c]lear and unambiguous statutory language is 'conclusive as to
legislative intent.'"  S&H
Indep. Premium Brands E., LLC v. Alcoholic Beverages Control Comm'n, 494 Mass.
464, 467 (2024), quoting HSBC Bank USA, N.A. v. Morris, 490 Mass. 322, 332
(2022).  "We need not turn to
legislative history because where the statutory language is clear and unambiguous,
'it must be interpreted as written.'" 
Doe No. 99 v. Cheffi, 105 Mass. App. Ct. 704, 710 (2025), quoting
Boss v. Leverett, 484 Mass. 553, 557 (2020). 
Here, the statutory language is clear, unambiguous, and explicit.
Judgment
reversed.

footnotes

[1] The city's
firefighters are represented by the Melrose Firefighters Union, Local 1617,
International Association of Fire Fighters, AFL-CIO.

[2] As stated,
the city actually paid the firefighter in full for twenty twenty-four hour
shifts in each Federal fiscal year, regardless of whether that service occurred
within a consecutive forty-day period. 
Of course, G. L. c. 33, § 59 (a), provides a floor,
not a ceiling.  The city was free to pay
the firefighter more than its interpretation of G. L. c. 33,
§ 59 (a), required.

[3] Because of
this case's impact on the Commonwealth, we requested the views of the State
Solicitor.  We gratefully acknowledge the
amicus brief filed by the State Solicitor on behalf of the Attorney General.

[4] The Attorney
General informs us that the Commonwealth's practice is consistent with hers and
the firefighter's interpretation of the statute.

[5] We are highly
skeptical that those service members undergoing training on weekends are being
routinely excused for the Monday following the weekend.